**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| TIA SAUCIER | § | PLAINTIFF |
| | § | |
| v. | § | Civil Action No. 1:04CV686HSORHW |
| | § | |
| COLDWELL BANKER JME | § | |
| REALTY, et al. | § | DEFENDANTS |

**ORDER AND REASONS GRANTING IN PART AND DENYING IN PART DEFENDANTS
JOSEPH M. ENDRY, CLARA PLUMMER AND JME REALTY COMPANY'S MOTION
FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANTS MYRA BLACKBURN,
CELESTE LACY, TIMOTHY NORRBOM, ANDRA PIPPIN, SANDRA SANCHEZ,
HANNAH STANLEY AND TONYA ZIMMERN'S MOTION FOR SUMMARY
JUDGMENT, AND GRANTING IN PART AND DENYING IN PART ALL DEFENDANTS'
MOTION TO STRIKE AFFIDAVITS OF ANGELA CAIN AND ROBERT PRAYTOR**

BEFORE THE COURT are two Motions for Summary Judgment [52, 54]

pursuant to FED. R. CIV. P. Rule 56, filed by Defendants in the above captioned cause

on March 21, 2007.  The first Motion for Summary Judgment [52] was filed on behalf of

Defendants Joseph M. Endry [Endry], Clara Plummer [Plummer], and JME Realty

Company [JME].  The second Motion for Summary Judgment [54] was filed on behalf of

Defendants Myra Balckburn, Celeste Lacy, Timothy Norrbom, Andra Pippin, Sandra

Sanchez, Hannah Stanley and Tonya Zimmern  [collectively referred to as "Sales

Associate Defendants"].  Plaintiff filed a Consolidated Response and Defendants filed a

Consolidated Rebuttal.

Also before the Court is a Motion to Strike the Affidavits of Angela Cain and

Robert Praytor [77], pursuant to FED. R. CIV. P. Rule 56(e), filed by all Defendants in

the above captioned cause on June 14, 2007.  The affidavits were submitted in support

of Plaintiff's Consolidated Opposition to Defendants' Motions for Summary Judgment

[67].  Plaintiff has filed an Opposition and Defendants filed a Rebuttal in connection with the Motion to Strike.

After consideration of the submissions and the relevant legal authorities and for the reasons discussed below, the Court finds that the Motion for Summary Judgment filed by the Sales Associate Defendants should be granted, the Motion for Summary Judgment filed by Endry, Plummer, and JME should be granted in part and denied in part, and Defendants' Motion to Strike should be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

On or about April 18, 2003, until on or about September 19, 2003, Plaintiff worked for JME as a real estate sales associate at The Legacy Condominiums [Legacy]. Defs.' Mem. Of Authorities in Supp. of Mot. for Summ. J. [1] at p. 2-3.[1]  Legacy is located in Gulfport, Mississippi.  Id. at 2.  Prior to actual construction of Legacy, JME was hired as the real estate broker to market and sell Legacy units.  Id.  JME is a Florida corporation.  Id.  Endry is JME's president and sole stockholder.  Id.  JME and Endry were licensed in Mississippi as non-resident brokers at all times relevant to this lawsuit.  Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1 & 2] at p. 3; Ct. Order no. 81 at p. 6.

Plaintiff was hired by JME as a sales associate for Legacy.  Ind. Contractor Agrmt. Btwn. Broker and Sales Associate, attached as Ex. "3" to Defs.' Mot. for Summ. J. [1].  At the time of the events giving rise to this lawsuit, Plaintiff alleges that

---

[1]Citations from Endry, Plummer and JME's Motion for Summary Judgment and the Sales Associate Defendants' Motion for Summary Judgment, will be denoted as "Defs.' Mot. for Summ. J. [1]" and "Defs.' Mot. for Summ. J. [2]," respectively.

Plummer was not licensed to sell real estate in Mississippi.  Pl.'s First Am. Compl. at ¶ 20, attached as Ex. "2" to Defs.' Mot. for Summ. J. [1].  There is no dispute that Plummer was licensed as a real estate broker and salesperson in Florida.  Mot. for Entry of Default and Entry of J. of Default, attached as Ex. "2" to Defs.' Consol. Rebuttal Mem. in Supp. of Defs.' Mot. for Summ. J.  The Sales Associate Defendants were all affiliated with JME as real estate sales associates for Legacy.  Defs.' Mem. of Authorities in Supp. of Mot. for Summ. J. [2] at p. 2.  Plaintiff alleges that, at all relevant times, none of the Sales Associate Defendants were licensed to sell real estate in Mississippi.  Pl.'s First Am. Compl. at ¶ 24, attached as Ex. "2" to Defs.' Mot. for Summ. J. [1].

On or about April 18, 2003, Plaintiff and JME entered into a written agreement entitled "Independent Contractor Agreement Between Broker and Sales Associate" [Sales Associate Agreement].  Ind. Contractor Agrmt. Btwn. Broker and Sales Associate, attached as Ex. "3" to Defs.' Mot. for Summ. J. [1].  This agreement sets forth various obligations between the broker and the sales associate, in this case, Plaintiff and JME.  Endry signed the agreement on behalf of JME.  Id.

On or about April 19, 2003, Plaintiff and JME entered into another written agreement entitled the "Legacy On-Site Sales Agreement" [Legacy Agreement].  Legacy On-Site Sales Agrmt., attached as Ex. "4" to Defs.' Mot. for Summ. J. [1].  Under the terms of this agreement, Plaintiff was to become the on-site sales specialist for Legacy, work under the direction of Plummer, and represent The Legacy Marketing Group [Coldwell Banker JME Realty] on the marketing of Legacy.  Id.  JME, in turn, agreed

to advance Plaintiff $3,500.00 per month to be repaid out of Plaintiff's commissions earned.  Id.  The contract also provided that all advances would be reimbursed to JME in the event Plaintiff left the development for any reason.  Id.

Plaintiff resigned from JME on or about September 19, 2003.  Pl.'s Resignation Letter, attached as Ex. "5" to Defs.' Mot. for Summ. J. [1].  Her resignation letter requested payment of commissions from the sales of three [3] Legacy units.  Id.  Plaintiff acknowledged that JME would need to deduct its advances made to Plaintiff pursuant to the Legacy Agreement.  Id.

On or about January 20, 2004, the Mississippi Real Estate Commission [MREC] brought a complaint against Endry and Plummer alleging a violation of the Mississippi Real Estate Broker's License Act of 1954, as amended, and the rules and regulations of the Commission.  Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2] at p. 4.  These allegations were premised upon the belief that Plummer sold real estate in Mississippi while working for JME without proper Mississippi licensure, and that JME condoned such behavior.  Id.  Endry and Plummer did not contest the allegations, but rather both entered into Agreed Orders dated June 25, 2004, and July 6, 2004, respectively.  Id.; Defs.' Consol. Rebuttal Mem. in Supp. of Defs.' Mot. for Summ. J. at p. 3; Ex. "B" and "C" of Pl.'s Compl., attached as Ex. "1" to Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2].

Plaintiff filed her Complaint and First Amended Complaint in this Court alleging, as to some or all Defendants, misrepresentation, conspiracy, breach of contract, and entitlement to recover under section 73-35-31(2) of the Mississippi Code

for Defendants' violations of Mississippi real estate laws.  Pl.'s Compl., attached as Ex. "1" to Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2]; Pl.'s First Am. Compl., attached as Ex "2" to Defs.' Mot. for Summ. J. [1].

Defendants' two Motions for Summary Judgment [52, 54] collectively argue that Plaintiff 1) has no standing to assert her claim for the alleged violation of Mississippi real estate statutes in this case; 2) has failed to establish any breach of written or oral contracts; and 3) is unable to support any conspiracy or misrepresentation claims against any of the Defendants.[2]

Also before this Court is Defendants' Motion to Strike the Affidavits [78] of Angela Cain and Robert Praytor, filed on or about June 14, 2007.  These affidavits were submitted in support of Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment [67].  Defendants allege that the affidavits are in violation of FED. R. CIV. P. Rule 56(e) for, among other things, offering impermissible legal conclusions and interpretations.

## II. <u>DISCUSSION</u>

A.   <u>Applicable Legal Standard</u>

Rule  56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there

---

[2]Because the Clerk's Entry of Default on March 21, 2007, was set aside per the Court's Order [70] dated April 18, 2007, this Court does not address the sections of Defendants' Motions for Summary Judgment that rely upon the doctrines of res judicata and collateral estoppel to bar Plaintiff's claims against them.

is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Booth*, 75 F. Supp.2d at 543.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and

assertions in briefs or legal memoranda. *See Booth,* 75 F. Supp.2d at 543.

When an affidavit submitted in support of or opposition to summary judgment does not comply with Federal Rule of Civil Procedure 56(e), it is subject to a motion to strike. *See Auto Drive-Away Co. Of Hialeah, Inc. v. I.C.C.*, 360 F.2d 446, 448-49 (5th Cir. 1966). Rule 56(e) provides that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. Rule 56(e).

Because this is a case of diversity jurisdiction, the Court must apply state substantive law. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938). "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law." *Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.    Plaintiff's Standing Under MISS. CODE ANN. § 73-35-31(2) and Defendants' Motion to Strike

Section 73-35-31(2) of the Mississippi Code states:

(2) In case any person, partnership, association or corporation shall have received any sum of money, or the equivalent thereto, as commission, compensation or profit by or in consequence of his violation of any provision of this chapter, such person, partnership, association or corporation shall also be liable to a penalty of not less than the amount of the sum of money so received and not more than four [4] times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved

and for his use and benefit, in any court of competent jurisdiction.

MISS. CODE ANN. § 73-35-31(2).

Plaintiff contends that Defendants collected commissions on the sales of Legacy units without proper Mississippi licensure and, thereby, did so in violation of Mississippi real estate laws. Pl.'s First Am. Compl. at ¶ 24, attached as Ex. "2" to Defs.' Mot. for Summ. J. [1]. Because Plaintiff did carry the requisite Mississippi licensure, she claims to qualify as a "person aggrieved" as contemplated by the statute. Id. at ¶ 30. As such, Plaintiff believes she is entitled to recoup up to four [4] times those commissions paid to Defendants. Id. Plaintiff submits the sworn affidavits of Robert Praytor [Administrator for MREC] and Angela Cain [Authorized Representative of the Mississippi Association of Realtors [MAR]] in support of her position. Cain Aff., attached as Ex. "1" to Defs.' Mot. to Strike; Praytor Aff., attached as Ex. "2" to to Defs.' Mot. to Strike.

Where the Mississippi Supreme Court has not specifically addressed the particular issue before the Court, the Court is required to make an *Erie* guess as to what the Mississippi Supreme Court would likely decide. *See Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*, 302 F.3d 552, 558 (5th Cir.2002). The task is to "attempt to predict state law, not to create or modify it." *Id. (citing Barfield v. Madison County, Miss.*, 794 F.2d 1005, 1008 (5th Cir. 1986)). In conducting the analysis, the Court is bound by an intermediate state appellate court decision so long as the Court is unconvinced "by other...data that the highest court of the state would decide otherwise." *Ladue v. Chevron, USA, Inc.*, 920 F.2d 272, 274 (5th Cir. 1991) (*citing West*

*v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *see also Hermann Holdings Ltd.*, 302 F.3d at 558.

Defendants assert, and the Court concurs, that because the Mississippi Supreme Court has not confronted the issue as to who qualifies as a "person aggrieved" pursuant to section 73-35-31(2) under the factual scenario of this case, the Mississippi Court of Appeals' decision in *Leary v. Stockman*, 937 So. 2d 964 (Miss. Ct. App. 2006), is highly persuasive, if not controlling.  The court in *Leary* found section 73-35-31(2) ambiguous and applied the rules of statutory construction to decipher the reasonable interpretation of "person aggrieved."  *See Leary*, 937 So. 2d at 974.  In so doing, the court found that only the buyer or seller paying a commission to the foreign broker qualified as a "person aggrieved," not the resident broker who alleged he was "aggrieved" from a commission agreement dispute with the foreign broker.  *See id*.  According to the court, the resident broker's relief was contract law, not section 73-35-31(2).  *See id*.

The Court is not persuaded by Plaintiff's contention that the Mississippi Supreme Court has addressed the precise issue in this case in its opinion in *Ladner v. Harsh*, 120 So. 2d 562 (Miss. 1960).  In *Ladner*, the Mississippi Supreme Court held a foreign real estate broker liable to sellers of property pursuant to the statute.  *See Ladner*, 120 So. 2d. at 564.  The court did not speak to whether a resident agent could recover for independent sales of foreign agents, or whether an "aggrieved person" qualified as anyone other than persons directly paying commissions to the foreign agent.

-9-

Even if the Court conducted an analysis of section 73-35-31(2) independent of *Leary*, the outcome would remain the same.  Plaintiff's assertions to the contrary, this Court finds the statute ambiguous as to the question of who may qualify as a "person aggrieved."  Where a statute is ambiguous, the Court is "required to interpret it in light of various rules of statutory construction."  *See Leary*, 937 So. 2d at 973-974 (*citing Pope v. Brock*, 912 So. 2d 935, 937 (Miss. 2005)).  The Court's duty "is to carefully review the statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case."  *Armstrong v. Estate of Thames,* 958 So. 2d 1258, 1259 (Miss. Ct. App. 2007*) (citing Pope*, 912 So. 2d at 937).

Following the rules of statutory construction, it is not reasonable to consider Plaintiff as a "person aggrieved."  A holding of this nature would either leave those persons who actually paid the foreign agent without recourse, or would open the proverbial floodgates of litigation and leave foreign agents subject to endless lawsuits for the same conduct.  Further, because the statute is penal in nature, it must be strictly construed.  *See Quick Shops of Mississippi, Inc. v. Bruce*, 232 So. 2d 351, 353 (Miss. 1970).  For these reasons, it is not reasonable to construe "persons aggrieved" so broadly as to include Plaintiff.

Plaintiff submits the affidavits, which Defendants have moved to strike, of Angela Cain and Robert Praytor to support her claim that she qualifies as a "person aggrieved."  Because both affidavits impermissibly offer legal conclusions and interpretations, the Court must strike ¶ 5 of the Cain affidavit and ¶ 4 of the Praytor affidavit.  "Unsupported allegations or affidavits setting forth ultimate or conclusory

-10-

facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

Because both affiants purport to interpret the scope of "person aggrieved" within the meaning of the law, and because neither affiant has any apparent specialized legal training or expertise, these paragraphs of their affidavits are in violation of Rule 56(e). The remaining paragraphs of the affidavits were not considered by the Court, and were thereby disregarded in reaching its determination that the Plaintiff lacks standing under section 73-35-31(2). Defendants' Motion to Strike is therefore granted in part, as to ¶ 5 of the Cain affidavit and ¶ 4 of the Praytor affidavit, and otherwise denied as moot.

Based on the foregoing, Plaintiff lacks standing to assert a claim under section 73-35-31(2) of the Mississippi Code. Her claims pursuant to this statute must be dismissed as to all Defendants as a matter of law.

C.   Plaintiff's Breach of Written Contract Claims Against Endry, Plummer and The Sales Associate Defendants

It is undisputed that Plaintiff and JME entered into two written contracts, the Sales Associate Agreement and the Legacy Agreement. Plaintiff does not identify any other written contracts between she and Defendants. Based upon Mississippi contract law as applied to these facts, the Court must grant summary judgment on Plaintiff's breach of written contract claims as to all Defendants except JME.

Mississippi law is clear that, "in order to maintain an action to enforce a breach of contract or to recover damages growing out of a breach, a relationship of privity of

contract must exist between the party damaged and the party sought to be held liable for the breach." *Allgood v. Bradford*, 473 So. 2d 402, 415 (Miss. 1985) *(citing Burns v. Washington Savings*, 171 So. 2d 322, 324 (Miss. 1965)).

Because neither Plummer nor the Sales Associate Defendants were signatories to either written contract, and because Plaintiff further admits in her deposition testimony that she did not enter into any agreements with the Sales Associate Defendants, the Court finds that no privity existed, and summary judgment in their favor is appropriate as to the breach of written contract claims.  Pl.'s Depo. at p. 128, Ex. "8" to Defs.' Mot. for Summ. J. [2]; Indep. Contractor Agrmt. Btwn. Broker and Sales Associate, attached as Ex "3" to Defs.' Mot. for Summ J. [1]; Legacy On-Site Sales Agrmt, attached as Ex "4" to Defs.' Mot. for Summ J. [1].

As for Endry, though he signed both contracts, he is not personally liable on the contracts inasmuch as the acts of JME in executing the contracts were not ultra vires. Based on the evidence submitted, there can be no dispute that, as president and sole shareholder of JME, in executing the written contracts Endry acted as JME's agent and was granted authority to make decisions on behalf of JME.  Endry's Depo. at p. 17-18, attached as Ex. "1" to Defs.' Mot. for Summ. J. [1].  "An agent of a disclosed principal is not a party to his principal's contract and cannot be liable for his breach." *Rogers v. Nationwide Prop. and Cas. Ins. Co.*, 443 F. Supp.2d 772, 776 (S.D. Miss. 2006).  Even if JME did not have authority to enter into the contract, which is not alleged, Endry still would not be held personally liable on the contract unless he were guilty of bad faith, practiced deceit, or otherwise misled Plaintiff into entering the

contract with JME. *See T.C.L., Inc. v. Lacoste,* 431 So.2d 918, 922 (Miss. 1983)

*(overruled on other grounds); McCarty v. Love,* 110 So. 795, 796 (Miss. 1927).  There is

no evidence or indication otherwise that JME was not authorized to enter into the

contract, or that Endry practiced fraud upon Plaintiff.  *See id.*

For the reasons stated, there are no issues of material fact as to Plaintiff's

breach of written contract claims against Endry, Plummer, or the Sales Associate

Defendants.  Plaintiff's breach of written contract claims are dismissed as a matter of

law as to these parties.

D.   <u>Plaintiff's Breach of Written Contract Claim Against JME as to the Sales
     Associate Agreement and the Legacy Agreement</u>

To establish a breach of contract claim, the plaintiff must prove (1) the existence

of a valid and binding contract; (2) that the defendant has broken, or breached it; and,

(3) that the plaintiff has been thereby damaged monetarily.  *See Favre Property*

*Management, LLC v. Cinque Bambini,* 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004)

*(citing Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)).  No party has alleged

that the Sales Associate Agreement and the Legacy Agreement were not valid contracts

binding JME and Plaintiff.  Because questions of fact exist only as to the Sales

Associate Agreement, the Court grants summary judgment as to the Legacy Agreement

as a matter of law.

1.   *Legacy Agreement*

Plaintiff has provided no evidence setting forth JME's alleged breach of the

Legacy Agreement.  Plaintiff's assertions concerning the supposed breach of the Legacy

Agreement are set forth in her deposition testimony, which follows:

-13-

Q:      Okay.  I guess also–well, how was it breached?

A:      Okay.  Sentence 3, "It is agreed that Coldwell Banker, JME Realty will make available to Tia a commission advance of 3,500 per month to be repaid out of her first commissions earned as the construction begins and sales continue."  That didn't happen.  I didn't continue to receive the draw as sales continued.

Q:      How many draws did you receive?

A:      I don't know the exact number.  Roughly five, six months, possibly.

Q:      I think it's about six.

A:      Okay.

Q:      And explain to me again, though, how that was a breach?

A:      Because I did not continue to receive my draw, obviously.

Q:      I don't understand.  You said you received your draw the whole time basically you were employed, or is it that you were associated with the Legacy side?

A:      Well, it says it's a commission advance.  I'm sure that "draw" would mean the same thing to a layman.  Well, then, let's just say I don't know right now.  I'll get back to this.

Q:      Did you receive draws until you resigned?

A:      Yes.

Q:      Based on what you just said as we sit here today, you can't explain to me how this was breached?

A:      I can't answer that.

Pl.'s Depo. at p. 114-115, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1]; Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2] at p 26.

Plaintiff does not dispute that she was paid pursuant to the terms of the Legacy

Agreement throughout her employment.  She offers no evidence, only an unsupported

-14-

assertion, that JME breached this particular contract.  Because Plaintiff lacks evidence supporting JME's alleged breach of the Legacy Agreement, she has not carried her burden of setting forth an issue for jury trial as to this claim.

      2.    *Sales Associate Agreement*

    In her deposition, Plaintiff sets forth evidence she claims supports breach of six paragraphs of the Sales Associate Agreement.  Pl.'s Depo. at p. 23, 83-94, 102-107, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1].  These supposed breaches are found in ¶¶ 1, 2, 3, 4, 7 and 9 of the contract.  Id.  As to the remaining paragraphs Plaintiff either denies any breach, or does not set forth sufficient evidence of breach or resulting damages.  Id.  The Court dismisses any claims Plaintiff may have concerning those paragraphs.

    As to the breaches alleged, the record, taken as a whole, reflects contradictory testimony from parties on both sides, including, but not limited to: alleged misrepresentations of condominium inventories/listings, alleged work conditions impeding productive work, alleged inabilities to sell or list real estate other than Legacy units, disputes over commission allocation and number of sales attributable to Plaintiff, and alleged illegal or unethical activities by Defendants.  See Pl.'s Depo. at p. 23-24, 56, 88-89, 94, 100-102, 108-110, attached as Ex. "6" to Defs.' Mot. for Summ J. [1]; Plummer's Depo. at p. 59-63, 69, 73-75, 92, 128-130, 132, attached as Ex. "11" to Defs.' Mot. for Summ. J. [1]; Endry's Depo. at p. 75-76, attached as Ex. "1" to Defs.' Mot. for Summ. J. [1]; Endry's Aff. at ¶ 4 and Ex. "C" to Aff. attached to Def.'s Mot. for Entry of Default, attached as Ex. "2" to Defs.' Consol. Rebuttal Mem. in Supp. of Defs.' Mot.

for Summ. J.; Pl.'s Resignation Letter, attached as Ex. "6" to Defs.' Mot. for Summ. J.
[1];  Pl.'s Resp. to First Set of Interrogs. by Plummer, nos. 3 and 4, attached as Ex. "9"
to Defs.' Mot. for Summ. J. [1];  Ex. "B" and Ex. "C" to Pl.'s Compl., attached as Ex. "1"
to Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2].  Because of such
inconsistencies, material questions of fact remain as to whether any breaches occurred
as to ¶¶ 1,2,3,4,7 and 9 of the Sales Associate Agreement, and summary judgment
cannot be granted in JME's favor on this basis.

      Nor can the Court grant summary judgment–as the defense suggests–based
upon Plaintiff's inability to identify resulting damages.  Defs.' Mem. of Authorities in
Supp. of  Mot. for Summ. J. [1] at p. 18.  In Mississippi, damages must be "proved with
reasonable certainty and may not be speculative or conjectural." *See Bagwell Coatings,
Inc. v. Middle South Energy, Inc.*, 797 F.2d 1298, 1309 (5th Cir. 1986).  However,
"where it is reasonably certain that the damage has resulted, mere uncertainty as to
the amount will not preclude the right of recovery or prevent a jury decision awarding
damages." *See Cain v. Cain*, 2007 WL 1816047, *10 (Miss. Ct. App. 2007) *(citing Cain
v. Mid-South Pump Co.*, 458 So. 2d 048, 1050 (Miss. 1984)).  "When loss has occurred
but 'the extent of the injury and the amount of damage are not capable of exact and
accurate proof,' damages may be awarded if the evidence lays a 'foundation which will
enable the trier of fact to make a fair and reasonable estimate of the amount of
damage." *Id*.

      Plaintiff's deposition is indeed laden with vague statements regarding her
purported monetary damages.  Pl.'s Depo. at p. 84, 89, 91, 104, 107, attached as Ex. "6"

to Defs.' Mot. for Summ. J. [1].  However, viewing the evidence in the light most favorable to Plaintiff, as the Court must, the Court finds that Plaintiff's general assertions of resulting financial harm are sufficient to carry her burden with regard to the Sales Associate Agreement past summary judgment.

Since questions of fact remain for a jury concerning JME's alleged breach of ¶¶ 1,2,3,4,7 and 9 of the Sales Associate Agreement, summary judgment on this issue is inappropriate.

E.      Plaintiff's Breach of Oral Contract Claim

The existence of an oral contract is a question of fact.  *See Leary v. Stockman*, 937 So. 2d 964, 971 (Miss. Ct. App. 2006).  To establish its existence, the plaintiff must demonstrate a mutual agreement by the parties to be bound by a duty.  *See id*.  A contract for broker's services need not be in writing.  *See id*.  Rather, it must appear that services were performed under such circumstances "as to give the recipient thereof some reason to think they were not gratuitous and not performed for some other person but with the expectation of compensation from recipient, and services must have been beneficial to the person sought to be made liable."  *Id*.  "The assent of the parties in the formation of a contract must necessarily be gathered by their words, acts and outward expressions." *Id*.

Plaintiff and Plummer entered into some sort of agreement, or attempted to enter into an agreement, concerning commissions.  Pl.'s Depo. at p. 154, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1]; Plummer's Depo. at p. 59-63, 66, attached as Ex. "11" to Defs.' Mot. for Summ J. [1].  According to Plaintiff, the two engaged in an oral

contract whereby Plaintiff and Plummer were to be a "team" and would split all commissions on sales and preexisting sales by fifty [50] percent.  Pl.'s Depo. at 120, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1].  The record, however, reflects material disputes concerning the agreement and its terms.  Plummer's Depo. at p. 62, 63, attached as Ex. "11" to Defs.' Mot. for Summ. J. [1].  Further, whether or not Plaintiff effectively waived the terms of the alleged oral contract through her resignation letter, which requested commissions for only three [3] unit sales, depends upon factual determinations properly reserved for the jury.  See Defs.' Mem. of Authorities in Supp. of Mot. for Summ. J. [1] at p. 14-16.  For these reasons, the Court will not grant summary judgment on Plaintiff's breach of oral contract claim as to Plummer.

There is also a jury question as to whether Plummer had authority to bind Endry and/or JME to this alleged oral contract.[3]  Conflicting evidence in the record includes, but is not limited to: 1) testimony regarding Plaintiff's perception that Plummer and Endry were "one and the same"and that JME and Endry "conferred authority upon [Plummer] to make any and all agreements...concerning [Plaintiff's] rights, compensation, and duties..."; 2) the MREC's finding in its Agreed Order dated

_____

[3]Plaintiff's Consolidated Opposition to Defendants' Motion for Summary Judgment sets forth, for the first time, claims of joint venture and partnership arrangements between Endry and Plummer.  Because these allegations were not set forth in her pleadings, the Court will not entertain them at this time.  The Court does acknowledge that the defense has also argued that the Plaintiff's agency theory was presented for the first time in her Opposition.  However, because the Sales Associate Agreement contemplates an agency, and because Plaintiff's discovery and briefs have been riddled with references to agency type claims and law, the Court finds that addressing this issue is not prejudicial to the defense.

June 25, 2004, that Plummer was Endry's agent; 3) Plummer's deposition testimony that she had no authority to represent Endry; and 4) the indication in ¶ 9 of the Sales Associate Agreement that under certain circumstances managers have the ability to bind the Broker.  See Plummer's Depo. at p. 110-111, attached as Ex. "11" to Defs.' Mot. for Summ. J. [1]; Pl.'s Depo. at p. 18, 46, 69, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1]; Ex. "B" to Pl.'s First Am. Compl., attached as Ex. "1" to Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2]; Pl.'s Resp. to First Set of Interrogs. by Plummer, no. 4, attached as Ex. "9" to Def.'s Mot. For Summ. J. [1]; Ind. Contractor Agrmt. Btwn. Broker and Sales Associate, ¶ 9, attached as Ex. "3" to Defs.' Mot. for Summ. J. [1]. There are material questions of fact as to whether Endry and/or JME can be held liable on the alleged oral contract.  As for the Sales Associate Defendants, Plaintiff offers insufficient evidence of an oral contract with them to create any disputes of material fact.

Based on the evidence set forth in the record, material issues of fact remain as to the possible terms of any oral contract between Plaintiff and Plummer, and as to whether Plaintiff effectively waived some or all of the conditions of the alleged contract. This claim survives summary judgment as to Defendants Plummer, Endry and JME, only.

F.      Plaintiff's Conspiracy Claims as to All Defendants

A conspiracy claim requires the following evidence: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the

proximate result." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004).  The existence of a conspiracy can be proved entirely upon circumstantial evidence.  *See Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996).  While the Court is required to draw inferences favorable to plaintiffs, such inferences must be "within the range of reasonable probability."  *Love v. King*, 784 F.2d 708, 711 (5th Cir. 1986). When an inference is "so tenuous that it rests merely upon speculation and conjecture, it is the duty of the court to withdraw the case from the jury."  *Id.*

It is basic to Mississippi conspiracy law that there must be "two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."  *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953); *see also Frye v. American General Finance, Inc.*, 307 F. Supp.2d 836, 843 (S.D. Miss. 2004); *Webb v. Culberson, Heller & Norton, Inc., et al.*, 257 F. Supp.923, 924-925 (D.C. Miss. 1973).  An exception to the general rule exists in the "rare instance in which employees have an *independent* personal stake in achieving the object of the conspiracy."  *H&B Equipment Co., Inc. v. International Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978) (*emphasis added*).  To have an "independent personal stake," the employee's profit must be wholly separate from the employee's connection to the corporation.  *See ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 179-180 (4th Cir. 2002); *see also H&B Equipment Co., Inc.*, 577 F.2d at 244.  The Fifth Circuit has noted that unless an employee has an interest in an organization legally distinct from the principal defendant, "it would be impossible for an employee to have an interest that

-20-

was truly 'independent.'" *H&B Equipment Co., Inc.*, 577 F.2d at 244.  Additionally, an employee's payment by commission does not create a "personal stake" in an alleged conspiracy so as to except him from the general law of corporate conspiracy.  *See Douty v. Irwin Mortg. Corp.*, 70 F. Supp. 2d 626, 633 (E.D. Va. 1999).

      1.     *Plummer, Endry, and JME*

      Summary judgment must be denied as to these Defendants on two fronts.  First, under Mississippi conspiracy law, there remains a question as to whether Plummer was an agent of JME, or otherwise part of JME's corporate being.  The record indicates that Plummer was not paid a salary, but also reflects that she was a JME manager, "employee," and "representative."  See Endry's Depo. at p. 45, 47, 53, 100, 104, attached as Ex. "1" to Defs.' Mot. for Summ. J. [1]; Plummer's Depo. at p. 38, 40, 111, attached as Ex. "11" to Defs.' Mot. for Summ. J. [1]; Pl.'s Resp. to Interrogs. by Plummer, no. 8, attached as Ex. "9" to Defs.' Mot. for Summ. J. [1].

It is not disputed that JME is a S-Corporation and that Endry is JME's president and sole stockholder.  Endry's Depo. at p. 15, 17, attached as Ex. "1" to Defs. Mot. for Summ. J. [1]; Defs.' Mem. of Authorities in Supp. of Mot. for Summ. J. [1] at p. 2. Depending on Plummer's status, Plummer, Endry and JME could be considered part of the corporate being and thereby incapable of conspiring with each other.  However, there appear to be disputes of fact in the record on this question.  For this reason, summary judgment predicated upon corporate conspiracy laws cannot be granted in favor of Plummer, Endry, and JME.

      Second, to support her claim that Defendants conspired to "...usurp real estate

commissions to which they were not entitled...," Plaintiff has set forth the following
evidence, which Defendants contest: alleged inaccuracies regarding condominium
inventories, involvement of allegedly unlicensed agents in the selling of condominiums,
and the actual number of sold units and receipt of alleged improperly paid
commissions.  Pl.'s First Am. Comp. at ¶ 24, attached as Ex. "2" to Defs.' Mot. for
Summ. J. [1];  Pl.'s Resp. to Interrogs. by Plummer, no. 11, attached as Ex. "9" to Defs.'
Mot. for Summ. J. [1].  As to the element of conspiracy requiring proof of unlawful
conduct, the record includes conflicting testimony as to whether sales were procured
within the state by unlicensed agents in violation of Mississippi real estate laws.  See
Endry's Depo. at p.76-77, attached as Ex. "1" to Defs.' Mot. for Summ. J. [1]; Pl.'s Depo.
at p. 149-53, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1].

> 2. *Sales Associate Defendants*

The Court finds summary judgment on the conspiracy claim proper as to the
Sales Associate Defendants.  Because the Sales Associate Defendants are independent
contractors and not managers, employees or otherwise officers of JME, they are not
considered part of the corporate being, and therefore are not immune from conspiracy
liability pursuant to corporate conspiracy laws.  *See Wallsten v. International Bank of
Commerce of Laredo*, 770 F. Supp. 1164, 1166 (S.D. Tex. 1991) (*indicating that a
corporation may be able to conspire with its independent contractors*); see also Ind.
Contractor Agrmt. Btwn. Broker and Sales Associate at ¶ 9, attached as Ex. "3" to
Defs.' Mot. for Summ. J. [1]; Stanley's Depo. at p. 24, attached as Ex. "10" to Defs.' Mot.
for Summ. J. [1].

Plaintiff has not presented sufficiently probative evidence that these Defendants entered into any agreement to knowingly further an illegal purpose in collusion with others.  Deposition testimony reflects that these Defendants were completely unaware of the alleged illegal nature of their actions.  See Pippin's Depo. at p. 25-26, Stanley's Depo. at p. 36-37; Zimmern's Depo. at p. 38-42; Blackburn's Depo. at p. 34, 41; Lacy's Depo. at p. 51--54; Norrbom's Depo. at p. 28, attached as Ex. "10" to Defs.' Mot. for Summ. J. [1].

Because of the lack of evidence presented supporting Plaintiff's conspiracy allegation against the Sales Associate Defendants, the Court finds summary judgment appropriate here.

G.     Plaintiff's Misrepresentation Claims as to Plummer, Endry and JME Survive Summary Judgment

To assert a misrepresentation claim, the following elements must be established: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth, 5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, 6) the hearer's ignorance of its falsity, 7) his reliance on its truth, 8) his right to rely thereon, and 9) his consequent and proximate injury.  *See Franklin v. Lovitt Equip. Co., Inc.*, 420 So. 2d 1370, 1373 (Miss. 1982).  "Representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises." *Bank of Shaw, a Branch of Grenada Bank v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990). "A promise of future conduct is, as a matter of *law,* not such a representation as will support recovery under a theory of negligent misrepresentation."  *Id*.  "Even in cases

-23-

where fraud is alleged, a promise of future conduct does not meet the requirement of a 'representation' unless such was made with present intent not to perform." *Id.*

The Court finds questions of fact exist as to whether misrepresentations were made by Endry and Plummer.  Plaintiff's First Amended Complaint does not allege misrepresentations against JME or the Sales Associate Defendants, and, based on the evidence in the record, the Court does not find any basis where such claims could be made against the Sales Associate Defendants.  See Pl.'s First Am. Compl., attached as Ex. "2" to Defs.' Mot. for Summ. J. [1]; Pl.'s Depo. at p. 144, attached as Ex. "6" to Defs.' Mot. for Summ. J. [1].  Therefore, Plaintiff has no cause of action against the Sales Associate Defendants for any misrepresentations.  As for JME, questions of fact remain regarding whether JME could be held liable on an agency theory for any alleged misrepresentations by Plummer or Endry.

Plaintiff asserts Plummer, Endry, and JME made representations concerning the conditions of her employment, how she would be utilized, the terms of her commissions, condominium availability, and compliance with Mississippi laws.  Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2] at p. 23-26; Pl.'s Resp. to Interrogs. by Endry, no. 8, attached as Ex. "9" to Defs.' Mot. for Summ. J. [1].  As discussed in part "C(2)", *supra*, questions of fact exist as to these claims.  To the extent any of these claims could be considered promises of future conduct, this Court will not dismiss them at this time.  Whether a promise of future conduct was made with the intention to not perform is a question of fact for the jury.  *See* 37 Am. Jur. 2D *Fraud and Deceit* § 90*; see also Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642-43 (Miss. 1996) (*finding cases*

*involving allegations of fraud or misrepresentation generally inappropriate for disposition at a summary judgment stage*).

Though it is evident from the record that Plaintiff had limited contact with Endry, questions of fact exist regarding whether Plummer could have bound JME and/or Endry through her alleged representations.  See Plummer's Depo. at p. 110-111, attached as Ex. "11" to Defs.' Mot. for Summ. J. [1]; Pl.'s Depo. at p. 18, 46, 69, 143 attached as Ex. "6" to Defs.' Mot. for Summ. J. [1]; Ex. "B" to Pl.'s First Am. Compl., attached as Ex. "1" to Pl.'s Consol. Resp. to Defs.' Mot. for Summ. J. [1&2]; Pl.'s Resp. to First Set of Interrogs. by Plummer, no. 4, attached as Ex. "9" to Def.'s Mot. For Summ. J. [1]; Ind. Contractor Agrmt. Btwn. Broker and Sales Associate, ¶ 9, attached as Ex. "3" to Defs.' Mot. for Summ. J. [1].  Plaintiff's claims of misrepresentation against Plummer, Endry, and JME survive summary judgment.

### III.  <u>CONCLUSION</u>

In summary, viewing the evidence in the light most favorable to Plaintiff, the Court finds the following: 1) all claims against the Sales Associate Defendants are dismissed; 2) Plaintiff lacks standing to maintain claims under section 73-35-31(2) of the Mississippi Code, and all claims asserted against Defendants filed under the purview of this statute are dismissed as a matter of law; 3) there is no privity of written contract between Plaintiff and Plummer or Endry, so that Plaintiff's breach of written contract claims are dismissed as to these Defendants; 4) Plaintiff does not set forth sufficient evidence of JME's breach of the Legacy Agreement, so that Plaintiff's breach of written contract claim against JME on the Legacy Agreement is dismissed; 5) the

record reflects material factual disputes regarding the alleged breach of the Sales Associate Agreement, and Plaintiff's breach of contract claim against JME as to this written contract survives summary judgment; 6) because material disputes of fact remain as to the existence and terms of Plaintiff's oral contract with Plummer, this claim survives summary judgment; further, because questions of fact remain as to whether JME, Endry, and/or Plummer could be bound by this alleged agreement, Plaintiff's breach of oral contract claims against JME, Endry, and/or Plummer survive summary judgment; 7) questions of fact remain as to whether Plummer is part of JME's corporate entity for purposes of corporate conspiracy laws, and if not, questions remain as to whether Plummer, Endry, and JME entered into an agreement to conspire against Plaintiff; and, 8) factual questions remain as to whether Plummer, Endry, and/or JME made misrepresentations to Plaintiff, therefore Plaintiff's misrepresentation claims against these Defendants survive summary judgment.

In summation, Plaintiff's following claims remain for trial: 1) against JME for breach of the written Sales Associate Agreement, specifically ¶¶ 1,2,3,4,7, and 9; 2) against Plummer, Endry, and JME for breach of oral contract; 3) against Plummer, Endry, and JME for alleged conspiracy; and, 4) against Plummer, Endry, and/or JME for misrepresentation.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion of Defendants Joseph M. Endry, Clara Plummer and JME Realty Company, for Summary Judgment [52], filed on March 21, 2007, pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED IN PART AND**

**DENIED IN PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion of Defendants Myra Blackburn, Celeste Lacy, Timothy Norrbom, Andra Pippin, Sandra Sanchez, Hannah Stanley, and Tonya Zimmern, for Summary Judgment [54], filed on March 21, 2007, pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED,** and all claims against these Defendants are hereby dismissed, with prejudice.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion of Defendants Joseph M. Endry, Clara Plummer, JME Realty Company, Myra Blackburn, Celeste Lacy, Timothy Norrbom, Andra Pippin, Sandra Sanchez, Hannah Stanley, and Tonya Zimmern, to Strike the Affidavits of Angela Cain and Robert Praytor [77], filed on June 14, 2007, pursuant to FED. R. CIV. P. 56(e), should be and is hereby **GRANTED IN PART AND DENIED IN PART**, and ¶ 5 of the Cain affidavit and ¶ 4 of the Praytor affidavit are hereby stricken.

**SO ORDERED AND ADJUDGED**, this the 28th day of August , 2007.


*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE