# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| TIA SAUCIER | § | PLAINTIFF |
| | § | |
| v. | § | Civil Action No. 1:04CV686HSORHW |
| | § | |
| COLDWELL BANKER JME | § | |
| REALTY, et al. | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CLARA PLUMMER'S CROSS MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF TIA SAUCIER'S CROSS MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT are the Cross Motions for Summary Judgment [142], [144], filed by Defendant Clara Plummer and Plaintiff Tia Saucier, respectively, on March 16, 2009. Both Motions have been fully briefed. After consideration of the Cross Motions, the mandate of the Fifth Circuit Court of Appeals, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Cross Motion for Summary Judgment filed by Defendant Clara Plummer should be granted, and the Cross Motion for Summary Judgment filed by Plaintiff Tia Saucier should be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

From April 18, 2003, until September 19, 2003, Plaintiff worked for Coldwell Banker JME Realty ("JME") as a real estate sales associate at The Legacy Condominiums ("Legacy"), a development located in Gulfport, Mississippi. Prior to actual construction of Legacy, JME was hired as the real estate broker to market and sell Legacy units. Clara Plummer ("Plummer") worked for JME as a co-listing

agent on Legacy. Upon her employment, Plaintiff entered into two written contracts with JME, as well as an alleged oral contract with Plummer to split all commissions on Legacy sales with Plummer by 50%.

Plaintiff filed her Complaint against JME and Plummer asserting, among other claims, misrepresentation, conspiracy, breach of oral contract, and breach of written contract. Trial of this matter commenced on October 1, 2007. At the close of all evidence, Defendants moved pursuant to Federal Rule of Civil Procedure 50(a) for Judgment as a Matter of Law on all claims. By Order [99] dated October 3, 2007, the Court dismissed all of Plaintiff's claims, other than her breach of oral contract claims against Plummer and JME, pursuant to Rule 50(a). The jury found that an oral contract had existed, and returned a verdict in favor of Plaintiff on her breach of oral contract claim. The jury awarded her damages in the amount of $410,000.00.

Following trial, Defendants moved for a Rule 50(b) Renewed Motion for Judgment as a Matter of Law, or, in the alternative, Rule 59 Motion for New Trial. The Court granted JME's Rule 50(b) Motion and conditionally granted its Rule 59 Motion. The Court also granted Plummer's Rule 50(b) Motion in part, reducing the amount of the Judgment against her from $410,000.00 to $30,411.51, and conditionally granted her Rule 59 Motion on the issue of damages only. The $30,411.51 amount awarded by the Court was based upon commissions earned by Plummer from sales of units in the first Legacy tower, "Legacy I", which occurred between April 18, 2003, and September 19, 2003, the dates of Plaintiff's

employment with JME.

Plaintiff appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed in part, reversed in part, and remanded for further proceedings. The Fifth Circuit found that this Court correctly reduced damages based on commissions from sales made by Plummer during Plaintiff's employment with JME, but should recalculate certain of her damages based on commissions from sales made by Plummer following Plaintiff's resignation on September 19, 2003. The Fifth Circuit directed this Court to recalculate Plaintiff's award utilizing the same method it had originally employed in resolving Plummer's Rule 50(b) Motion.

Plaintiff asserts that the proper measure of her damages on remand includes commissions Plummer earned from sales of condominium units in Legacy I, as well as those Plummer received from sales in the second tower, known as "Legacy II." Trial Exhibits P-23, P-25, P-26, and P-28 in evidence contain documents reflecting commissions earned by Plummer for unit sales on Legacy I. Trial Exhibits P-36, P-37, P-40, P-41, P-43 to P51, P-53, and P-55 in evidence contain documents reflecting commissions earned by Plummer for sales on Legacy II. There is no dispute that Plaintiff is entitled to an additional share of Plummer's commissions from sales of Legacy I units pursuant to the Fifth Circuit's opinion. The parties disagree as to whether Plaintiff is entitled to any share of commissions Plummer earned from her sales of Legacy II units.

A. *Legacy I Commissions*

Exhibits P-23, P-25, P-26, and P-28 in evidence contain documents reflecting

Legacy I sales commissions earned by Plummer after Plaintiff's resignation on September 19, 2003, which the Fifth Circuit has held Plaintiff was entitled to share with Plummer above and beyond the $30,411.51 already awarded by this Court. The Property Information Sheets in each Exhibit supply a unit selling price, a Multi-Listing Service ("MLS") selling commission percentage, as well as a percentage of that selling commission attributable to the selling agent or otherwise owed to another agent. Where the MLS selling commission percentage is not reflected on the Property Information Sheet, the Court refers to other documents in the Exhibits for a total commission percentage. Half of the total commission percentage represents the selling commission percentage. *See* Oct. 2, 2007 Trial Tr. at p. 190, attached as Ex. "4" to Def.'s Cross Mot.[1] Based upon the evidence in the record and the testimony of the witnesses at trial, Plummer was owed the selling commission percentage of each unit selling price, reduced by any amount owed to other agents, and further reduced by 30% as a result of a 70% / 30% commission split agreement between Plummer and her broker, JME. Plaintiff is then entitled to half of the remaining figure based upon the oral contract between she and Plummer to split commissions.

The Property Information Sheet contained in Exhibit P-23 indicates a unit sales price of $595,000.00, but does not reflect a MLS sales commission percentage.

---

[1]This is the methodology the Court employed at the January 29, 2008, post-trial Rule 50(b) Motion hearing. *See* Jan. 29, 2008, Hr'g Tr. at p. 51, attached as Ex. "2" to Def.'s Cross Mot. (applying a 3% selling commission to the unit sale reflected in Exhibit P-20).

The Assignor/Assignee Exhibit to the HUD-1 Settlement Statement in Exhibit P-23 reflects a 4% total commission percentage, indicating a 2% selling commission. Plummer thus earned 2% of this unit sales price, or $11,900.00. Because there is no evidence that any other amounts were owed to another agent, the total selling commission is not reduced by any selling or referral percentage. JME was entitled to 30% of the total selling commission, or $3,570.00, leaving Plummer with $8,330.00 of her earned commission. Plaintiff is entitled to half of that amount, or $4,165.00, on this particular sale.

The Property Information Sheet from Exhibit P-25 reflects a unit sales price of $535,000.00, but does not reflect a MLS sales commission percentage. The Standard Exclusive Right of Sale Listing Agreement found in Exhibit P-25 reflects a 6% total commission percentage, indicating a 3% selling commission. Plummer thus earned 3% of this unit sales price, or $16,050.00. The Property Information Sheet indicates that 75% of the total selling commission was owed to two other agents as selling referral fees. The remaining selling commission, reduced by 75%, totals $4,012.50. JME was entitled to 30% of this figure, or $1,203.75, leaving Plummer with $2,808.75 of her earned commission. Plaintiff is entitled to half of this amount, or $1,404.38.

The Property Information Sheet contained in Exhibit P-26 indicates a unit sales price of $535,000.00, but does not reflect a MLS sales commission percentage. The Standard Exclusive Right of Sale Listing Agreement found in Exhibit P-26 reflects a 6% total commission percentage, indicating a 3% selling commission. The

total selling commission was 3% of this unit sales price, totaling $16,050.00. The Property Information Sheet indicates that Plummer and another selling agent split the total selling commission. Half of this selling commission comes to $8,025.00. JME was then entitled to 30% of Plummer's share of the selling commission, or $2,407.50, leaving Plummer with $5,617.50. Plaintiff is entitled to half of this amount, or $2,808.75.

The Property Information Sheet from Exhibit P-28 indicates a unit sales price of $277,900.00, and a MLS sales commission percentage of 2.5%. Plummer thus earned 2.5% of this unit sales price, totaling $6,947.50. Because there is no indication that any other amount was owed to another agent, the total selling commission is not reduced by any selling or referral percentage. JME was entitled to 30% of this remaining figure, or $2,084.25, leaving Plummer with $4,863.25. Plaintiff is entitled to half of that amount, or $2,431.63.

Based on the foregoing, Plaintiff is entitled to: (1) $4,165.00 of Plummer's commission earned on the unit sale reflected in Exhibit P-23; (2) $1,404.38 of Plummer's commission earned on the unit sale reflected in Exhibit P-25; (3) $2,808.75 of Plummer's commission earned on the unit sale reflected in Exhibit P-26; and (4) $2,431.63 of Plummer's commission earned on the unit sale reflected in Exhibit P-28. Totaling these figures, Plaintiff is entitled to an additional $10,809.76 of Legacy I selling commissions earned by Plummer after Plaintiff's resignation on September 19, 2003.

B.   *Legacy II Commissions*

The parties dispute whether Plaintiff is entitled to any share of Plummer's commissions earned from sales of Legacy II units. Plaintiff contends that she should receive a share. Defendant counters that Plaintiff is barred from seeking Legacy II commissions on grounds that she is bound by her counsel's limitation of damages, which he made in his closing argument at the trial of this matter, to Legacy I sales only.

In *King v. Armstrong World Indus.*, 906 F.2d 1022, 1024-25 (5th Cir. 1990), the Fifth Circuit held that an attorney's remarks, made in closing, constituted binding admissions against the party he represented. This holding is consistent with long-established precedent:

> [t]he power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced....In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. *They may limit the demand made or the set-off claimed.*

*Dillon v. Wal-Mart Stores, Inc.*, 161 F.3d 8, at *2 (5th Cir. 1998) (emphasis in original) (*quoting Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)).

While Plaintiff is correct in asserting that statements and arguments of attorneys are not evidence or law, she is incorrect in concluding that such statements cannot constitute admissions chargeable against a party. *See id.* "The terms 'evidence' and 'admissions' represent different concepts: Evidence presented at trial serves to assist the factfinder in ascertaining the truth; admissions made at trial constitute the truth." *Id.*

During closing argument at the trial of this matter, Plaintiff's counsel directed the jury to consider Exhibits P-6, P-8, P-9, P-13, P-24, and P-25 in calculating Plaintiff's damages. *See* Oct. 4, 2007, Trial Tr. at p. 473, attached as Ex. "1" to Def.'s Cross Mot. These Exhibits reflect commissions earned by Plummer for sales of Legacy I units only. *See id.* at p. 474. Counsel reinforced his position that the jury limit its calculations to Legacy I sales in stating:

> [a]nd while under the law, because they broke the contract, [Plaintiff] is entitled to every benefit she would have gotten under the contract. She is not asking for that because she went out and found other work....*So she isn't even asking for any of the sales side of Tower Two, only from Tower One.*

*Id.* at p 477 (emphasis added).

Relying on Exhibits P-6, P-8, P-9, P-13, P-24, and P-25, counsel instructed the jury that Plaintiff's damages equated to $410,802.00, "and that [was] the amount [they] should award in this case." *Id.* at p. 476. The jury returned a verdict in the amount of $410,000.00, consistent with Plaintiff's counsel's calculations. The Court also relied on counsel's limitation of damages when it calculated Plaintiff's reduced award on Plummer's Rule 50(b) Motion for Judgment as a Matter of Law. *See* Jan. 29, 2008, Hr'g Tr. at p. 45, attached as Ex. "2" to Def.'s Cross Mot.

On remand Plaintiff now seeks damages from sales of Legacy II units. Under the law of this Circuit, Plaintiff's counsel's limitation of damages made at the trial of this matter is binding. Plaintiff cannot now seek damages associated with sales of Legacy II units.

C.  *Post-Judgment Interest*

Plaintiff seeks an award of post-judgment interest pursuant to 28 U.S.C. § 1961, to accrue from the date of the January 30, 2008, Amended Final Judgment. "Long-standing precedent establishes that a district court possesses no authority to calculate post-judgment interest from a date before its post-remand decision unless the mandate of the court of appeals directs otherwise." *See Reaves v. Ole Man River Towing, Inc.*, 761 F.2d 1111, 1112 (5th Cir. 1985); *see also* FED. R. APP. P. 37. Because the Fifth Circuit's mandate in this case did not direct the Court to calculate post-judgment interest from a date prior to a post-remand decision, this Court lacks authority to grant Plaintiff's request for post-judgment interest accruing from January 30, 2008.  Under the law of this Circuit, "[i]f an appellate court reverses or modifies a judgment with a direction that a judgment be entered against a party, the mandate from the appellate court must specifically order that interest to run from the date of the first judgment, else interest runs from the date of the second, modified judgment." *Vickers v. Chiles Drilling Co.*, 882 F.2d 158, 159 (5th Cir. 1989) (*citing* FED. R. APP. P. 37).  The Court therefore will grant Plaintiff post-judgment interest from the date of its Judgment entered post-remand, as prescribed by 28 U.S.C. § 1961.

## III.  CONCLUSION

Plaintiff is entitled to commissions from Legacy I unit sales earned by Defendant Clara Plummer after Plaintiff's September 19, 2003, resignation in the amount of $10,809.76, plus any post-judgment interest on the total amount of her

award as provided by 28 U.S.C. § 1961, from the date of post-remand Judgment, which will be entered contemporaneously with this Opinion. Plaintiff is precluded from recovery of commissions earned from Legacy II unit sales.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Cross Motion for Summary Judgment [142], filed by Defendant Clara Plummer, should be and is hereby **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Cross Motion for Summary Judgment[144], filed by Plaintiff Tia Saucier, should be and is hereby **GRANTED IN PART AND DENIED IN PART**. The Cross Motion is granted to the extent it seeks additional damages from sales of Legacy I units, and the Court hereby awards Plaintiff an additional $10,809.76 from such sales, resulting in a total award in favor of Plaintiff in the amount of $41,221.27. Judgment will be entered in this amount. The Cross Motion is denied to the extent it seeks damages from sales of Legacy II units, and to the extent it seeks accrual of post-judgment interest from a date prior to the date of post-remand Judgment.

**SO ORDERED AND ADJUDGED**, this the 8th day of October, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE